## Richardson v. Richardson, Appellant.

Argued September 29, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Milford J. Meyer,* with him *Eugene John Lewis,* for appellant.

*W. Albert Sanders,* for appellee.

OPINION BY RHODES, J., October 27, 1937:

This is an action of divorce which was brought by the husband against his wife on the ground that she wilfully and maliciously, and without reasonable cause, deserted him on December 20, 1933, and persisted in such desertion for more than two years. The libel was filed on June 25, 1935. Respondent appeared and filed an answer denying the charge as set forth in the libel. The master to whom the case was referred recommended that a divorce be granted. Exceptions to the master's report were filed by respondent, but were dismissed by the court below and a final decree of divorce entered. From the final decree respondent has appealed.

The parties were married in Seattle, Wash., on March 7, 1925, where they maintained a home for about nine months. Thereafter libellant came to Philadelphia to obtain employment, and was followed six months later by respondent. The parties resided at various addresses in Philadelphia until the final separation on December 20, 1933. It would serve no useful purpose to recite the respective versions of what transpired during the married life of libellant and respondent prior to the alleged desertion of libellant by respondent on December 20, 1933. During the time they resided in Philadelphia and prior to the alleged desertion both respondent and libellant had left the common domicile. The separations were followed by reconciliation and cohabitation. Most of the testimony refers to occurrences prior to December 20, 1933, and is not especially relevant or material. The crucial issue involved is whether the testimony sustains the charge of desertion by respondent as alleged in the libel. We are all of the opinion that the evidence produced by libellant does not support the decree, and that it must be reversed.

Libellant's testimony relates largely to incompatibility between him and respondent, and to want of sympathy and lack of cooperation. As to the alleged desertion on December 20, 1933, libellant testified that

when he returned from work on that evening he discovered his belongings on the front porch; that he asked respondent why his things were there; that she replied, "I am tired of having you around here; I don't want you around here any more. There is your stuff out there, go your way—go wherever you want to go"; that this happened about five or six o'clock in the afternoon; that he tried to find out from her what it was all about; that that night he stayed at a hotel; that the next day he went out and obtained a room, and sent the expressman around to remove his trunk. Henceforth the parties did not live together, and, although libellant testified that he endeavored on numerous occasions to see respondent relative to living together again, they did not meet for this purpose until December, 1934, at Linton's restaurant in Philadelphia.

One witness, Jessica M. Wilson, testified for libellant. Her testimony afforded no material corroboration, and was as consistent with most of respondent's statements as with libellant's. As to the incident in question, this witness gave no positive corroboration to libellant's version of what transpired. She testified that she was living with libellant and respondent at the time; that she did not see any trunk on the porch on the morning of December 20th when she left for work; that she saw the trunk there when she returned in the evening; that she did not know who put it there; that she did not know whether libellant actually packed his things or not; that she did not see any packing in the house during the week prior to the alleged desertion; that the trunk could have been packed in the cellar or the attic without her knowing about it.

Libellant's testimony is unsupported, and is contradicted by that of respondent and her son, by a former marriage, who lived with them. Respondent testified that during the week prior to December 20th libellant had stated that he thought he "had made a mistake and he was going to go again"; that he packed his be-

longings, and set the trunk on the front porch and left his bags in the house. She further testified: "Q. Where did you say it to him? A. Just going out the door—I said 'Bill, do you realize you are deserting me?' He said 'Yes' and went out and slammed the door—that is all there was to that. Q. In this interim, between the time he said it was a mistake, and the time of his going, did you speak to him to change his mind? A. Yes, I said 'Bill, I think it is foolish for you to make a change.' He knows I said that—'because you could stay here and we could get along just fine.' Q. Then you did not pack his bags and you did not put his bags on the porch? A. Oh positively, I was amazed at that— no, no, because I wanted him to stay there. I have always been very much in love with him. Q. Have you always wanted him back? A. Yes. Q. Are you in love with him today? A. Yes. Q. Would you be willing to go back and live with him today? A. Yes. Q. As man and wife? A. Yes, certainly."

Respondent is corroborated by her son as to libellant's getting his things together and packing them during the week previous to the final separation. He also testified that he heard libellant tell respondent, a few days prior to December 20th, that he did not want to stay any longer as they were not getting along.

Respondent denied that libellant had ever endeavored to effect a reconciliation. On the occasion when they met in Linton's restaurant in December, 1934, a year after the alleged desertion, libellant testified that he had suggested that they should forget the past and get together again, but that respondent offered no basis for a reconciliation. Respondent's version of this incident is that libellant approached her relative to obtaining a divorce, and sought to ascertain whether she would oppose it. On this occasion libellant did not mention to respondent or discuss with her the Mexican divorce proceedings which he had previously instituted in May, 1934. The basis of these proceedings was in-

compatibility; they were subsequently dropped by libellant.

As to the desertion alleged in the libel, the weight of the evidence is with respondent. Although a decree in divorce may be supported by the testimony of libellant without any corroboration, nevertheless, if this testimony is contradicted and shaken by respondent, and there are no convincing circumstances which warrant a disregard of the contradictory evidence, a decree should not be granted. *James v. James,* 126 Pa. Superior Ct. 479, 488, 191 A. 191. Libellant in this case did not meet the burden of establishing desertion by respondent by clear and satisfactory proofs or by the weight of the evidence.

The decree of the court below is reversed, and the libel is dismissed at the cost of the appellee.